EDMUND G. BROWN JR.
Attorney General of the State of California
KARIN S. SCHWARTZ
Supervising Deputy Attorney General
SUSAN M. CARSON, State Bar No. 135875
Supervising Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5580
 Fax:  (415) 703-5480
 E-mail:  susan.carson@doj.ca.gov

Attorneys for Respondents John Wagner,
Director of Department of Social Services
and Department of Social Services

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSHUA LEONARD,**<br><br>Plaintiff and Petitioner,<br><br>v.<br><br>**JOHN WAGNER, Director, California Department of Social Services and CALIFORNIA DEPARTMENT OF SOCIAL SERVICES,**<br><br>Defendants and Respondents. | No.  C 07 4490 JCS<br><br>**MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT**<br>**(Fed. R. Civ. Proc. 14(a))**<br><br>Date:  October 26, 2007<br>Time:  9:30 a.m.<br>Place:  Courtroom A, 15th Floor<br>Judge: The Hon. Joseph C. Spero |

**RELIEF SOUGHT**

Respondents/Defendants JOHN WAGNER, Director, California Department of Social Services, and CALIFORNIA DEPARTMENT OF SOCIAL SERVICES (DSS), move for leave to serve a summons and third-party complaint on U.S. Department of Health and Human Services (USDHHS).  (Copies of the Summons and Third-Party Complaint are attached hereto as Exhibit A.)

/ / /

/ / /

**GROUNDS FOR RELIEF**

1. USDHHS is or may liable to DSS for all or part of Petition/Plaintiff's claim against DSS and its director. In particular, if DSS is found to be in violation of the Americans with Disabilities Act (ADA) because of the "completion rule" under California's foster care program (Welf. & Inst. Code §§ 11401 and 11403), then USDHHS must contribute to the cost of California's compliance with the ADA through federal financial participation (FFP). However, absent an agreement by USDHHS, the only way in which this FFP can be assured is by lawsuit.

2. This motion is being made since Respondents/Defendants served their answer on September 7, 2007, more than 10 days after today's date. Therefore, leave of court is required pursuant to Rule 14(a) of the Federal Rules of Civil Procedure.

3. Despite the need for leave of court, the slight delay in bringing this motion was due to the requirement that the approval of various levels of the Executive Branch of California state government be secured.

4. Permitting the third-party complaint at this time will not unduly prejudice any party. This case has only recently been removed to federal court and the answer was filed just 14 days ago. The only other action in the case thus far has been that Petitioner/Plaintiff has filed a motion to remand that is to be heard on October 26, 2007 which Respondents/Defendants will oppose. It would be efficient, therefore, for all parties to have this motion granted prior to the motion for remand being heard.

5. As the Affidavit of Susan M. Carson shows, prior to filing this motion, she met and conferred with Angela Schwartz, counsel for Petitioner/Plaintiff. Ms. Schwartz has indicated that Petitioner/Plaintiff will oppose this motion, asserting that USDHHS should instead be sued in a separate lawsuit.

/ / /

/ / /

/ / /

/ / /

/ / /

1

**RECORD ON MOTION**

2       This motion is based on the pleadings and papers on file in this action, this motion, and

3   attached Notice of Motion and Exhibit A, the accompanying memorandum of points and

4   authorities, the Affidavit of Susan M. Carson, and whatever evidence and argument is presented

5   at any hearing that may be held on the motion.

6   Dated: September 21, 2007

7                                             Respectfully submitted,

8                                             EDMUND G. BROWN JR.
                                          Attorney General of the State of California

9                                            KARIN S. SCHWARTZ
                                         Supervising Deputy Attorney General

10

11                                                /s/Susan M. Carson

12

13                                            SUSAN M. CARSON
                                         Supervising Deputy Attorney General

14                                            Attorneys for Respondents John Wagner,
                                         Director of Department of Social Services,

15                                            and Department of Social Services

16   SF2007401962

17   40175359.wpd

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | KARIN S. SCHWARTZ
Supervising Deputy Attorney General
3 | SUSAN M. CARSON, State Bar No. 135875
Supervising Deputy Attorney General
4 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
5 | Telephone: (415) 703-5580
Fax: (415) 703-5480
6 | E-mail: susan.carson@doj.ca.gov

7 | Attorneys for Respondents John Wagner,
Director of Department of Social Services
8 | and Department of Social Services

9

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

**JOSHUA LEONARD,**

14

Plaintiff and Petitioner,

15

v.

16

**JOHN WAGNER, Director, California
Department of Social Services and**
17 | **CALIFORNIA DEPARTMENT OF SOCIAL**
18 | **SERVICES,**

19

Defendants and Respondents.

No.  C 07 4490 JCS

**THIRD-PARTY SUMMONS (Fed.
R. Civ. Proc. 14(a))**

20

21 | TO UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES:

22 |        You are hereby summoned and required to serve upon Angela Schwartz,

23 | petitioner/plaintiff's counsel whose address is The Public Interest Law Project, 449 15th Street,

24 | Suit 301, Oakland, California 94612, and upon Susan M. Carson, who is attorney for

25 | respondents/defendants and third-party plaintiffs John Wagner and California Department of

26 | Social Services, whose address is Office of the Attorney General, 455 Golden Gate Avenue, 11th

27 | Floor, San Francisco, California 94102, an answer to the third-party complaint which is herewith

28 | served upon you within 20 days after service of this summons upon you exclusive of the day of

1   service.  If you fail to do so, judgment by default will be taken against you for the relief

2   demanded in the third-party complaint.  This is also served upon you herewith a copy of the

3   petition/complaint of the petitioner/plaintiff which you may but are not required to answer.

4

5   Dated:

6

7                                                    _____

8   SF2007401962                                     Clerk of the Court
    40175365.wpd
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | KARIN S. SCHWARTZ
Supervising Deputy Attorney General
3 | SUSAN M. CARSON, State Bar No. 135875
Supervising Deputy Attorney General
4 |  455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
5 |  Telephone: (415) 703-5580
Fax: (415) 703-5480
6 |  E-mail: susan.carson@doj.ca.gov

7 | Attorneys for Respondents John Wagner,
Director of Department of Social Services
8 | and Department of Social Services

9

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

**JOSHUA LEONARD,**

14

                    Plaintiff and Petitioner,

15

       v.

16

**JOHN WAGNER, Director, California
17 | Department of Social Services and
CALIFORNIA DEPARTMENT OF SOCIAL
18 | SERVICES,**

19

          Defendants and Respondents.

No. C 07 4490 JCS

**THIRD-PARTY COMPLAINT
(Fed. R. Civ. Proc. 14(a))**

20

21 | **JURISDICTION**

22 |     1. This court has jurisdiction over a dispute between Petitioner/Plaintiff, Joshua Leonard,

23 | and Respondents/Defendants John Wagner and California Department of Social Services on the

24 | basis of federal question jurisdiction under 28 U.S.C. section 1331.

25 |     2. This third-party complaint asserts that the United States Department of Health and

26 | Human Services (USDHHS) is liable to Respondent California Department of Social Services

27 | (DSS) for the liability DSS may owe to Petitioner/Plaintiff if DSS is found to be in violation of

28 | the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*) and California Government

1    Code section 11135 because of the existence of the "completion rule" set forth in California

2    Welfare & Institutions Code sections 11401 and 11403.  Under federal law, the foster care

3    assistance program operates under the provisions that governed Aid for Families with Dependent

4    Children provisions (a program that itself no longer exists).  ( 42 U.S.C.§ 672.)  Former 42

5    U.S.C. section 606(a) defined "dependent child" for purposes of eligibility as one who is under

6    the age of 18, or "at the option of the State, under the age of nineteen and a full-time student in a

7    secondary school (or in the equivalent level of vocational or technical training), if, before he

8    attains age nineteen, he may reasonably be expected to complete the program of such secondary

9    school (or such training) . . . ."

10       California has opted to provide services to foster youth under age 19 who are full-time

11   students and on track to complete their educational program prior to reaching age 19.  Welfare &

12   Institutions Code section 11401 provides in pertinent part:  "Aid in the form of AFDC-FC shall

13   be provided . . . on behalf of any child under the age of 18 years, except as provided in Section

14   11403, who meets the conditions of [various subdivisions of section 11401]."  Section 11403

15   provides that a child who is in foster care and attending high school or its equivalent on a full-

16   time basis prior to his or her 18th birthday, may receive aid after his or her 18th birthday, so long

17   as the child continues to reside in foster care, continues to be eligible for AFDC-FC payments,

18   and continues to attend school on a full-basis, and "may reasonably be expected to complete the

19   educational or training program or to receive a high school equivalency certificate, for his or her

20   19th birthday."  Thus, these state law provisions mirror the federal eligibility provisions.  Thus,

21   the claim asserted in this third-party complaint arises out of the same facts and circumstances as

22   those of the original complaint so that the court may exercise supplement jurisdiction over the

23   state law claim under the provisions of 28 U.S.C. section 1367(a).

**CLAIM FOR RELIEF**

25       3. Petitioner/Plaintiff Joshua Leonard has filed a complaint against

26   Respondents/Defendants John Wagner and DSS in this action.  A copy of Petitioner/Plaintiff's

27   complaint is attached to this third-party complaint as Exhibit 1.

28   / / /

1    4. USDHHS , the third-party defendant, is liable to DSS for its proportionate share of

2  plaintiff's claim against DSS because under a state plan agreement USDHHS contributes a share

3  of the payments that are made to children eligible to receive assistance under the foster care

4  program.

5                                   **PRAYER**

6    John Wagner and DSS therefore demand judgment against USDHHS for its proportionate

7  share of any payments that must to children receiving assistance under the state's foster care

8  program.

9  Dated: September 21, 2007

10                                             Respectfully submitted,

11                                             EDMUND G. BROWN JR.
                                              Attorney General of the State of California

12                                             KARIN S. SCHWARTZ
                                              Supervising Deputy Attorney General
13

14                                             /s/Susan M. Carson

15

16                                             SUSAN M. CARSON
                                              Supervising Deputy Attorney General
17                                             Attorneys for Respondents John Wagner,
                                              Director of Department of Social Services,
18                                             and Department of Social Services

19  SF2007401962

20  40175361.wpd

21

22

23

24

25

26

27

28

**EXHIBIT 1 to EXHIBIT A**

ENDORSED
FILED
San Francisco County Superior Court

JUL 25 2007

GORDON PARK-LI, Clerk
BY: DEBORAH STEPPE
Deputy Clerk

1 | Angela Schwartz (Bar No. 234650)
Stephen Ronfeldt (Bar No. 41044)
2 | THE PUBLIC INTEREST LAW PROJECT
449 15th Street, Suite 301
3 | Oakland, CA 94612-2038
Tel. (510) 891-9794
4 | Fax (510) 891-9727

5 | Alice Bussiere (Bar No. 114680)
Corene Kendrick (Bar No. 226642)
6 | YOUTH LAW CENTER
200 Pine Street, Suite 300
7 | San Francisco, CA 94104
Tel (415) 543-3379
8 | Fax: (415) 956-9022

9 | Richard Rothschild (Bar No. 67356)
Nu Usaha (Bar No. 190094)
10 | WESTERN CENTER ON LAW AND POVERTY
3701 Wilshire Boulevard, Suite 208
11 | Los Angeles, CA 90010-2809
Tel. (213) 487-7211

12

13 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

14 | FOR THE COUNTY OF SAN FRANCISCO

15

16 | JOSHUA LEONARD,     Case No.: CPF-07-507449

17 |         Petitioner/Plaintiff;

18 |     vs.     PETITION FOR WRIT OF MANDATE
(CCP § 1085); VERIFIED COMPLAINT
19 | JOHN WAGNER, Director, California     FOR DECLARATORY AND
Department of Social Services,     INJUNCTIVE RELIEF
20
and
21
22 | CALIFORNIA DEPARTMENT OF SOCIAL
SERVICES,
23
24 |         Respondents/Defendants.

25

26

27

28

1

1

2                                    I.      INTRODUCTION

3    1.      California's Aid to Families with Dependent Children – Foster Care (AFDC-FC)

4    program funds the placement of foster youth by providing financial support to foster youth

5    through foster care maintenance payments to the individuals who are caring for them. Foster

6    youth who are in school can continue to receive AFDC-FC benefits after the age of 18, but only

7    if they can show they are expected to complete their educational program by their 19th birthday

8    This rule, known as the "completion rule," deprives foster children with disabilities who cannot

9    be expected to complete school by age 19 because of their disabilities the same opportunity that

10   their non-disabled peers have to participate in the AFDC-FC program between the ages of 18 and

11   19. The completion rule effectively deprives these foster youth with disabilities of their only

12   home and the opportunity to develop a more comprehensive and stable transition plan that comes

13   with an additional year in foster care.

14   2.      This action challenges the completion rule as discriminating against foster children with

15   disabilities, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*.

16   and California Government Code § 11135. By application of this rule, vulnerable 18-year-old

17   foster youth are effectively excluded from participating in the foster care program for no reason

18   other than their disabilities.

19   3.      These foster youth have been abused, neglected, and removed from their homes, and face

20   transition to independent living without the support or stability that comes through having

21   parents or another type of permanent home. In addition, these foster youth suffer from serious

22   physical and mental disabilities, which result in the youth lagging behind their peers in school.

23   The completion rule compounds the problems that foster youth with disabilities have in school,

24   by preventing them from remaining in their foster care placements, and thus in school, after

25   reaching the age of 18. The completion rule has the effect of discriminating against students

26   who are foster youth with disabilities by making it extremely difficult for them to ever complete

27   schooling, simply because they were not expected to do so by the age of 19

28

                                                  2

4.      Tragically, all too many of these foster children with disabilities exit the foster care system and grow into adults who are homeless, drug addicted, or without the skills to hold regular jobs. Their long-term relationship with the criminal justice and welfare systems will cost California taxpayers millions of dollars more than the expense of having provided them services for the critical final year of adolescence, launching them to successful adulthood.

5.      In *Fry v. Saenz*, 98 Cal.App.4th 256 (Cal Ct. App. 3d 2002), the Court of Appeal held that the school completion rule in the CalWORKs program, which is identical to the completion rule at issue in this action, violated federal disability laws because the rule was not an essential eligibility requirement, and that its modification would not fundamentally alter the CalWORKs program. Respondents have refused to apply the *Fry* analysis to the AFDC-FC program.

6.      Petitioner/Plaintiff (hereinafter "Petitioner") therefore seeks a writ of mandate under Code of Civil Procedure § 1085 that would require state child welfare officials to continue AFDC-FC funding until age 19 for foster youth with disabilities who are not expected to complete their high school, vocational, or GED program by age 19 because of disabilities.

## II.    PARTIES

### A.    Petitioner

7.      Petitioner Joshua Leonard (hereinafter "Leonard") is a citizen taxpayer in the State of California and a resident of San Francisco County. Leonard is the Executive Director of Bay Area Youth Centers ("BAYC"), a non-profit agency that serves adolescents, ages 15 to 19, who are in out-of-home care. All of the youth served by BAYC have a mental health diagnosis or diagnoses, and over 50% of the youth have Individualized Education Plans (IEPs) and receive special education services through their school. Over 66% of BAYC's funding comes from the AFDC-FC payments they receive on behalf of the foster youth placed in their residential programs. Once a youth's AFDC-FC benefits terminate, the youth cannot remain at BAYC, and must find an alternative place to live and means of supporting himself. BAYC attempts to plan for this transition with each youth in their care. Because of the completion rule, it is often difficult for BAYC staff to predict when a youth will emancipate out of care, because the ability

3

1  of the youth to stay in foster care hinges on whether the youth's school will verify that he or she

2  is reasonably expected to graduate. Further, those youth with disabilities who are forced to leave

3  BAYC at the age of 18 have a more difficult time transitioning to adulthood, by virtue of the fact

4  that they lose the additional year of the services and support provided by BAYC.

5  8.       Leonard is beneficially interested in the lawful administration of the AFDC-FC program,

6  particularly as it relates to the ongoing funding for youth with disabilities who are being denied

7  up to an additional year of AFDC-FC benefits, because they cannot complete high school by the

8  time they turn 19 due to their disabilities.

9  9.       Leonard is assessed to pay, and within one year of this lawsuit has paid, taxes to the State

10  of California.

11  10.     Leonard brings this action in his capacity as a beneficially interested party pursuant to

12  Code of Civil Procedure § 1085 and as a citizen taxpayer pursuant to Code of Civil Procedure

13  § 526a to compel Respondents to cease their illegal and wasteful policies and practices, and to

14  ensure the safety and well-being of children in foster care with disabilities.

15

16  **B.     Respondents**

17  11.     Respondent/Defendant (hereinafter "Respondent") JOHN WAGNER is the Director of

18  California Department of Social Services and, as such, is responsible for administering the

19  AFDC-FC program and ensuring its compliance with the law. Respondent Wagner is sued in his

20  official capacity.

21  12.     Respondent California Department of Social Services (hereinafter "CDSS") is

22  responsible for the delivery and administration of public programs and services relating to

23  children and families in California, including but not limited to, foster care services. CDSS is

24  responsible for establishing and administering the AFDC-FC program on a statewide basis, and

25  is responsible for overseeing each county's administration of the program and for ensuring each

26  county's compliance with the law. The counties act as agents of CDSS in administering their

27  child welfare programs.

28

4

## III.   STATUTORY AND REGULATORY FRAMEWORK

### A.  Federal Statutes Prohibiting Discrimination Based on Disability

13.     Title II of the Americans with Disabilities Act of 1990 (hereinafter "ADA"), 42 U.S.C. § 12101 *et seq*, prohibits discrimination by public entities on the basis of disability. A "public entity" is defined to include, *inter alia*, "any department, agency... or other instrumentality of a State..." Respondent Department of Social Services is a public entity under the ADA.

14.     The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

15.     Federal regulations implementing the ADA, found at 28 C.F.R. § 35.130 *et seq*, require agencies, such as the CDSS, to make reasonable modifications in their programs to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7)  Further, these regulations require agencies to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

16.     A "qualified individual with a disability" is an individual with a disability who, "*with or without reasonable modifications* to rules, policies, or practices... meets the essential eligibility requirements" for the program or services in question. 42 U.S.C. § 12131(2) (emphasis added).

### B.  State Statute Prohibiting Discrimination Based on Disability

17.     California Government Code § 11135 prohibits discrimination on the basis of disability in any program funded directly by the state or receiving any financial assistance from the state.

18.     Section 11135 provides that any program or activity that is funded directly by the state or that receives any financial assistance from the state shall "meet the protections and prohibitions contained in Section 202 of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12132), and the federal rules and regulations adopted in implementation thereof."

19.     Respondent CDSS is a department of the state of California that receives state financial assistance for the AFDC-FC program.

5

1

2        **C. Overview of California's Foster Care Program**

3        20.     When a youth is "removed from his or her own family" California is charged with

4     "secur[ing] for the minor custody, care, and discipline as nearly as possible equivalent to that

5     which should have been given by his or her parents" and "provid[ing] maximum safety and

6     protection for children who are currently being physically, sexually, or emotionally abused,

7     being neglected, or being exploited, and to ensure the safety, protection, and physical and

8     emotional well-being of children who are at risk of that harm." Welf. & Inst. Code §§ 202(a),

9     300.2.

10       21.     California enters a special relationship with the children who are removed from their

11    homes and placed under the state's care and supervision. These children rely on the state to

12    provide them "as nearly as possible... the custody, care, and discipline equivalent to that which

13    should have been given to the child by his or her parents." Welf. & Inst. Code § 16000(a), *see*

14    *also,* Welf. & Inst. Code § 202(a).

15       22.     In California, parents are obligated to support their child "in the manner suitable to the

16    child's circumstances" beyond the age of 18 when the child is "a full-time high school student...

17    who is not self-supporting, until the time the child completes the 12th grade or attains the age of

18    19 years, whichever occurs first." Family Code §§ 3900; 3901.

19       23.     Foster care is intended to be a "temporary method of care for the children of this state"

20    and the underlying goal of the child welfare system is "reunification with the natural parent or

21    parents or another alternate permanent living situation such as adoption or guardianship." Welf.

22    & Inst. Code § 396, *see also,* Welf. & Inst. Code § 727.3.

23       24.     For those youth who are not returned home and for whom no alternate permanent living

24    situation has been achieved, the Legislature has declared its "commitment to children who are in

25    out-of-home placement to live in the least restrictive, most family-like setting." Welf. & Inst.

26    Code § 16000(a). In fulfilling this commitment, the Legislature has declared its intent to "ensure

27    that children leaving the foster care system have support within their communities, to improve

28

6

1  the quality and homelike nature of out-of-home care, and to foster the educational progress of

2  children in out-of-home care." Welf. & Inst. Code § 16500.1.

3  25.     For those foster youth who "age out" of foster care, because a permanent living situation

4  was never achieved, the county welfare department must verify that it has provided essential

5  services to the youth in preparation for emancipation including "referral to transitional housing,

6  if available, or assistance in securing other housing . . . assistance in obtaining employment or

7  other financial support . . . [and] [a]ssistance in applying for admission to college or to a

8  vocational training program or other educational institution and in obtaining financial aid, where

9  appropriate." Welf. & Inst. Code § 391(b)(3) - (4).

10  26.     If the county welfare department has failed to provide these essential services and

11  opportunities to the youth, the dependency court is authorized to "continue its jurisdiction over

12  the youth [when] termination of jurisdiction would be harmful to the best interests of the child."

13  Welf. & Inst. Code § 391(c). In addition, the dependency court can continue jurisdiction over a

14  youth until the ward or the dependent child attains the age of 21 when to do so is in the youth's

15  best interest. Welf. & Inst. Code § 303.

16  27      Another core purpose of California's child welfare program is to meet the educational

17  needs of youth in the state's care by ensuring that they have the same educational opportunities

18  as those youth who are living with their own families. The Legislature has declared its intent to

19  "ensure that all pupils in foster care... have the opportunity to meet the challenging state pupil

20  academic achievement standards to which all pupils are held." Welf. & Inst. Code § 16000(b);

21  see also, Educ. Code § 48645.5.

22  28.     To this end, California affords numerous educational rights to foster youth in order to

23  ensure that each youth is provided the opportunity to complete his or her education. For

24  example, foster youth must be (1) afforded access to the same academic resources, services, and

25  extracurricular activities available to all pupils; (2) placed in the least restrictive educational

26  program; and (3) placed in an educational setting that is in the child's best interests. Welf. &

27  Inst. Code § 362.05; 726(b)(5); Educ. Code § 48853(g).

28

7

29.     In addition, a foster youth cannot be forced to change schools in the middle of an academic year. Even when a foster child is removed from his or her placement, the school district where the youth was initially attending must allow the youth to remain in his or her school of origin for the remainder of the academic school year, provided it is in his or her best interest to do so. Educ. Code § 48853.5(d)(1).

30      Finally, "[p]rior to making any recommendation to move a foster child from his or her school of origin, the [foster youth services] liaison shall provide the foster child and the person holding the right to make educational decisions for the foster child with a written explanation stating the basis for the recommendation and how this recommendation serves the foster child's best interest." Educ. Code § 48853 5(d)(3).

31.     In short, the core purpose of California's foster care program is to provide the same kind of care, security, and developmental opportunities provided to youth who are raised in their own families and to ensure that those youth who emancipate out of foster care into adulthood are fully prepared to successfully make the transition to independent living.

### D. California's Aid to Families with Dependent Children-Foster Care (AFDC-FC) Payment Program and the Completion Rule

32.     One of the primary ways that California provides for the individual needs of the youth in its care is through the AFDC-FC program which provides "financial assistance for those children who are in need of substitute parenting and who have been placed in foster care." Welf. & Inst. Code § 11400 *et seq.*; Dep't of Soc. Serv., Manual of Policies & Procedures, § 45-100.

33.     Through the AFDC-FC program, foster care providers are "paid a per child per month rate in return for the care and supervision of the AFDC-FC child placed with them." Welf. & Inst. Code § 11460(a).

34.     The AFDC-FC payment is intended to cover the cost of "food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation." Welf. & Inst Code § 11460(b).

8

35.    In addition, for a child placed in a group home, "care and supervision shall also include reasonable administration and operational activities necessary to provide the items" listed above. Welf. & Inst. Code § 11460(b)(1).

36.    Without the financial support provided through their AFDC-FC payment, most foster youth would not be able to live in a normal family setting. Further, for most youth, the loss of AFDC-FC funding means the loss of the youth's placement.

37.    In order to be eligible for AFDC-FC, a youth must be (1) removed from his or her home either through relinquishment for adoption, voluntary placement, or by a judicial determination that remaining in the home would be contrary to the child's welfare; and (2) placed in an approved setting, including the approved home of a relative, a licensed foster family home or group home, or with a non-related legal guardian. Welf. & Inst. Code §§ 11401; 11402.

38.    A foster youth is eligible for AFDC-FC benefits until the age of 18 and can continue to receive AFDC-FC after his 18th birthday "so long as the child continues to reside in foster care placement, remains otherwise eligible for AFDC-FC payments, and continues to attend high school or the equivalent level of vocational or technical training on a full-time basis, or continues to pursue a high school equivalency certificate, and the child may reasonably be expected to complete the educational or training program or to receive a high school equivalency certificate, before his or her 19th birthday." Welf & Inst. Code §§ 11401; 11403.

39    Counties require foster youth to obtain verification from their school that they will complete school by the age of 19. If the school fails or refuses to verify that the youth is expected to complete his program by his 19th birthday, then the youth's AFDC-FC benefit ends when the youth turns 18.


# IV.    STATEMENT OF FACTS

40.    Termination of AFDC-FC eliminates a critical source of financial support for foster youth. Once AFDC-FC is terminated, many of these youth have no place to live. In California, studies have shown that 65% of foster youth leave foster care without a place to live.

9

41. Petitioner Leonard serves as the Executive Director of Bay Area Youth Centers (BAYC), a non-profit agency that serves foster youth with disabilities who are directly affected by the completion rule.

42. Bay Area Youth Centers (BAYC) provides housing and supportive services to adolescents, ages 15 to 19, through their group home and Transitional Housing Placement (THP) programs. BAYC's mission is to prepare youth in out-of-home care for a successful, healthy adult life, through a youth development approach. In order to be eligible to participate in one of BAYC's housing programs, the youth must be placed in out-of-home care. Over 95% of the youth that BAYC serves are foster youth. To participate in the THP program, the youth must be 16 years of age or older, enrolled in a full-time education program, enrolled in Independent Living Services program, and have been assessed by a mental health professional and meet the criteria for a diagnosis from the Diagnostic and Statistical Manual of Mental Disorders put out by the American Psychiatric Association.

43. In addition to their mental health conditions, over 50% of the youth at BAYC have learning or developmental disabilities, and receive special education services through the Individuals with Disabilities in Education Act (IDEA).

44. The staff of BAYC tracks the educational progress of each youth in the program for the full year leading up to the youth's 18th birthday in an effort to anticipate whether a particular youth is in danger of failing to satisfy the completion rule.

45. However, despite the efforts of the staff at BAYC, every year there are several youth who are forced to leave BAYC at the age of 18 because they are not expected to complete their education program by the time they turn 19, and the staff at BAYC cannot find any other program that they are expected to complete by the time they turn 19. These youth are among the most disabled youth that BAYC serves, and they are also the least prepared to live on their own and support themselves. Because of the completion rule, these youth are forced out of foster care without a high school diploma or a GED. These youth leave care without the additional vocational training, opportunity to save resources and funds, and developmental time that BAYC

10

1  is able to provide to the other youth at BAYC who are higher functioning and thus, expected to

2  complete their education program by age 19

3  46.    It is much more difficult for foster youth with disabilities to satisfy the completion rule

4  due to their disabilities.  One recent study found that foster youth with disabilities lag behind

5  their peers in school, suffer educationally, and are at significant risk of academic failure.  These

6  risks are heightened when arbitrary time limits are imposed on their education progress

7  47.    The completion rule also results in foster youth with disabilities being placed in overly

8  restrictive educational programs that do not offer the same opportunities as a mainstream school.

9  For example, staff at BAYC often have to seek out education programs that can certify that the

10  youth is expected to complete the program by the time he or she turns 19.  This often means that

11  the youth must forego schooling in a mainstream setting and enroll in a non-public school or

12  some other type of program that offers reduced credit requirements and standards  These

13  programs rarely lead to a high school diploma, and often do not enable a participant to go on to a

14  university or college.

15  48.    Foster youth with disabilities who cannot graduate by the age of 19 do not have access to

16  the same academic resources, services and extracurricular activities available to other pupils,

17  because foster youth with disabilities are forced out of their placements and, as a result, their

18  schools at the age of 18, before they have completed their educational program.  Youth without

19  disabilities whose schools certify that they are expected to complete school by the age of 19 have

20  access to an entire extra year of academic resources, services, and extracurricular activities

21  49.    The completion rule discriminates against foster youth with disabilities by preventing

22  them from being able to complete their schooling.  Only those youth who are expected to

23  complete their educational program by the age of 19 are permitted to continue to receive AFDC-

24  FC funds, and as a result, to remain in their placements and continue with their education after

25  the age of 18.  For example, BAYC can only serve foster youth as long as they remain eligible

26  for the AFDC-FC benefit.  As a result, many of the youth who are forced to leave their

27  placements at 18 are not only deprived of their AFDC-FC benefit and housing at the age of 18,

28

11

1  but also deprived of their educations. Once these youth lose their housing, remaining in school

2  becomes difficult, if not impossible.

3  50.    Finally, the completion rule operates to undermine the rights of youth with disabilities,

4  who are permitted to remain in their schools until the age of 22 in order to complete their

5  education. 20 U.S.C. §§ 1400, 1401(a)18, 1412(2)(b).

6

7  **VI.    GENERAL ALLEGATIONS**

8  51.    An actual controversy exists between Petitioner and Respondents in that Petitioner

9  contends that the federal and state statutes and policies and practices set forth above violate the

10  the ADA and Gov. Code § 11135. Respondents deny this contention. Petitioner desires a

11  determination of the respective rights and duties of the parties. Unless there is a judicial

12  declaration of Petitioner's rights, Respondents' unlawful conduct will continue.

13  52.    Petitioner is entitled to a writ of mandate under Code Civ. Proc. § 1085, in that

14  Respondents have a clear, present and ministerial duty to administer the AFDC-FC program in

15  conformity with the requirements of federal and state law.

16  53.    Respondents at all times relevant to this action had, and continue to have, the ability to

17  administer the AFDC-FC program in accordance with the requirements of federal and state anti-

18  discrimination law.

19  54.    Petitioner has a beneficial interest in the performance by Respondents of their duties to

20  administer the AFDC-FC program in accordance with law.

21  55.    Petitioner lacks a plain, speedy, or adequate remedy at law except by writ of mandate.

22  56.    Petitioner is entitled to declaratory relief against all Respondents under Code Civ. Proc. §

23  1060 in that Petitioner contends that Respondents' application of the age 19 rule to foster

24  children with disabilities violates the ADA and Gov. Code § 11135 and Respondents contend

25  otherwise.

26  57.    AFDC-FC benefits are, by definition, subsistence-income provided to needy children in

27  foster care who are in need of substitute parenting. The loss of AFDC-FC benefits due to

28

12

1  Respondents' unlawful discrimination results in the loss of a foster youth's source of income,

2  and thus their housing.

3  58.    A writ mandating that Respondents not terminate benefits to 18-year old foster youth

4  with disabilities who cannot be expected to complete school by age 19 because of disability will

5  not cause any substantial harm to Respondents.

6

7  **FIRST CAUSE OF ACTION**

8  **(Violation of Americans with Disabilities Act, 42 U.S.C. § 12132 and**

9  **Code of Civ. Proc. § 1085)**

10  59.    Petitioner realleges and incorporates by reference each allegation in paragraphs 1 through

11  58 above as though fully set forth herein.

12  60.    The ADA, 42 U.S.C. § 12101 *et seq.*, provides that no qualified individual with a

13  disability shall, by reason of such disability, be denied benefits or subjected to discrimination by

14  a public entity.

15  61.    The ADA requires the State to make reasonable modifications in its program so as to

16  accommodate individuals with disabilities.

17  62.    Foster youth who have been placed in approved placements, including foster family

18  homes, group homes, and transitional housing placement programs, are qualified individuals for

19  AFDC-FC benefits.

20  63.    In light of the purposes of the AFDC-FC program, the completion rule is not an essential

21  eligibility requirement. Modifying the completion rule is reasonable and necessary in order to

22  ensure that foster youth with disabilities have meaningful access to the AFDC-FC and child

23  welfare programs. Respondents' refusal to grant AFDC-FC benefits to 18-year-old foster

24  children with disabilities because they will not complete school by age 19 violates the ADA,

25  when the inability to complete school by 19 is caused by the disability.

26  64.    This violation constitutes an illegal expenditure of public funds within the meaning of

27  Code of Civil Procedure § 526a.

28

**SECOND CAUSE OF ACTION**

**(Violation of Government Code § 11135 and Code of Civ. Proc. § 1085)**

65.     California Gov. Code § 11135 provides that programs or activities funded directly by the state or receiving any financial assistance from the state shall meet the protections and prohibitions contained in Section 202 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132, and the federal rules and regulations adopted in implementation thereof.

66.     The AFDC-FC program is a program that receives state financial assistance

67.     Respondents' refusal to grant AFDC-FC benefits to 18-year-old foster children with disabilities because they are not expected to complete their educational program by age 19 violates Gov. Code § 11135, when the inability to complete school is caused by disability.

68.     The ADA and Gov. Code § 11135 require the State to make reasonable modifications in its programs so as to accommodate individuals with disabilities.

69.     This violation constitutes an illegal expenditure of public funds within the meaning of Code of Civil Procedure § 526a.

**VIII.**

**RELIEF REQUESTED**

WHEREFORE, the Petitioner respectfully prays for the following relief:

1.     That this Court assert jurisdiction over this matter;

2.     A declaration that the termination of AFDC-FC benefits on the basis of Welf. & Inst. Code § 11403 to foster children who turn 18, as applied to foster children whose reason for not completing high school, vocational school, or a GED by age 19 is a disability, violates the ADA and Gov. Code § 11135;

3.     A permanent injunction prohibiting the termination of AFDC-FC benefits to foster children who turn 18 and will not complete high school, vocation school, or a GED program by age 19, if the reason they will not complete their program is a disability;

14

4.    A writ of mandate under Code of Civil Procedure § 1085 prohibiting the termination of AFDC-FC benefits to foster children who turn 18 and will not complete high school, vocational school, or a GED by age 19, if the reason they will not complete school is a disability;

5.    A permanent injunction pursuant to Code of Civil Procedure § 526a prohibiting the Respondents from spending money to implement the completion rule;

6.    An order awarding Petitioner the costs of this action and awarding reasonable attorneys' fees and costs; and

7.    Such other relief as the Court may deem just and proper.

Dated: July 25, 2007        Respectfully submitted,

Angela Schwartz
Stephen Ronfeldt
THE PUBLIC INTEREST LAW PROJECT
449 15th Street, Suite 301
Oakland, CA 94612-2038

Alice Bussiere
Corene Kendrick
YOUTH LAW CENTER
200 Pine Street, Suite 300
San Francisco, CA

Richard Rothschild
Nu Usaha
WESTERN CENTER ON LAW AND POVERTY
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA 90010-2809

By:    *Corene Kendrick*

Corene Kendrick
Attorneys for Petitioner

15

VERIFICATION

1

2    I am the petitioner to this action  I have read the Petition and I certify the facts contained

3    therein are true of my own knowledge

4    I declare under the penalty of perjury under the laws of the State of California that the

5    foregoing is true and correct

6    Executed this 19 day of July 2007, in _Hayward_, California.

7

8

9               Joshua Leonard

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Petition for Writ of Mandate - 16